BJORNEBY' et al., Respondents, v. MINNEAPOLIS THRESHING MACHINE CO., Appellant.

(No. 3,950.)

(Submitted September 20, 1918. Decided November 18, 1918.)

[176 Pac. 617.]

*Principal and Agent—Commissions—Agency Contracts—Modification—Effect—Account Stated.*

Principal and Agent—Commissions—Account Stated.
  1.  In an action to recover commissions on sales of farm implements under an agency contract, a "settlement sheet," the debit and credit sides of which apparently balanced and which was signed by plaintiffs, *held*, under the circumstances, not to constitute an account stated, *i. e.*, an agreement that nothing was due them for services performed in making the sales.

  [As to right of agent to file bill against principal for an accounting see note in Ann. Cas. 1914B, 836.]

Same—Agency Contract—Modification—Right to Commissions.
  2.  Sales for less than price list and on terms different from those authorized in the agency contract could not prevent recovery of commissions where the changes in price and terms were directed by defendant under a clause in the contract reserving to itself the right to do so.

Same—Payment—Second-hand Articles—Commissions.
   3. Where sales agents were instructed by their principal to accept a second-hand engine as part payment on new farm implements, the value placed upon the engine by defendant company represented money, on which plaintiffs were entitled to commissions.
Same—Right to Commissions—Unpaid Installments.
   4. Where an agency agreement provided that commissions on time sales should be due only when the installments were paid to the principal, they could not be recovered upon unpaid installments.

*Appeal from District Court, Flathead County; T. A. Thompson, Judge.*

ACTION by Emil B. Bjorneby and another, doing business under the firm name and style of Bjorneby Brothers, against the Minneapolis Threshing Machine Company. Judgment for plaintiffs. Defendant appeals. Modified and affirmed.

*Messrs. McKenzie & McKenzie,* for Appellant, submitted a brief; *Mr. John McKenzie* argued the cause orally.

Plaintiffs allege a settlement between the parties concerning the sale but object to a part of the settlement sheet, to-wit: The placing of the small "o." And with respect to the small "o" or the settlement sheet, they do not allege any false statements or representations made by appellant regarding the same, but simply allege that appellant artfully, skillfully and fraudulently, *etc.,* placed the small "o" in such a manner that at the time plaintiffs signed the settlement sheet, they did not observe or notice it. The allegation with reference to the "o" is not sufficient to constitute fraud in the making of the settlement. The "o" was in the settlement sheet when respondents signed the same, but they did not notice it—that is all. In pleading fraud or deceit in the making of a contract, the statement of facts as to how the fraud or deceit was committed must make it appear with reasonable certainty, (1) that the defendant made a representation or statement intending that the plaintiff should act upon it; (2) that the representation was false; (3) that the plaintiff believed the statement and acted upon it and was damaged. (*Power & Bro., Ltd., v. Turner,* 37

Mont. 521, 97 Pac. 950.)   Neither do the facts alleged show a concealment of the "o" by appellant.

Appellant makes the point that it appears from the complaint that the parties thereto had a mutual accounting and settlement in writing as to and covering the sale set out in the complaint, and an account was then and there stated between them as to the sale and the commission; and the items of the original account could not be "inquired into or surcharged except upon the ground of fraud, error or mistake in the ascertainment of the balance, and then only when the fraud, error or mistake upon which the agreement is sought to be impeached is specifically alleged." (*Martin* v. *Heinze,* 31 Mont. 68, 77 Pac. 427.)   No fraud, error or mistake is charged as to the statement of account in this case.   That one item is disputed will not prevent the amount of the others from becoming an account stated. (*Mulford* v. *Caesar,* 53 Mo. App. 263.)   The objection to some only of the items in the account will admit the others to be correct.   (*Joseph* v. *Southwark Foundry & Mach. Co.,* 99 Ala. 47, 10 South. 327; *Burns* v. *Campbell,* 71 Ala. 271, 286; *Tuggle* v. *Minor,* 76 Cal. 96, 18 Pac. 131.)   There may be an account stated between a factor and his consignor.   (*Smith* v. *Marvin,* 27 N. Y. 137.)   The fact that the account was not made out between the parties but that one made it and sent it to the other, who received and acquiesced in it, will not prevent its being an account stated.   (*Toland* v. *Sprague,* 37 U. S. (12 Pet.) 334, 9 L. Ed. 1107.)   A letter containing an account, if rendered by one to the other of the parties to the account and retained by the latter without objecting within a reasonable time, will be evidence of the correctness of the account. (*Smith* v. *Kennedy,* 1 Wash. Ter. 55.)

*Messrs. Foot & MacDonald,* for Respondents, submitted a brief; *Mr. T. H. MacDonald* argued the cause orally.

Respondents find fault with the complaint in that it does not set forth the fraud of the appellant with sufficient certainty. His remedy is not a general demurrer but a demurrer under

subdivision 7, section 6534, Revised Codes. "A general charge of fraud may be sufficient, however, in a case not susceptible of a more specific charge." (*McLachlan* v. *Staples*, 13 Wis. 448.)

The most favorable view to which appellant is entitled from the settlement sheet is that it does not state what the commission to be paid respondents is to be, but leaves that in ambiguity. The complaint alleges the settlement was prepared by appellant. That ambiguity or uncertainty must be construed most strongly against the appellant who is responsible for it. (*Finley* v. *School District*, 51 Mont. 411, 153 Pac. 1010.)

The following cases hold that one may declare on the original contract and impeach a subsequent account stated for fraud and mistake. "Where items are omitted plaintiff may sue for correct balance." (*Standard Oil Co.* v. *Van Etten*, 107 U. S. 325, 27 L. Ed. 319, 1 Sup. Ct. Rep 178.) "It is doubtless true that the creditor may for certain purposes disregard the settlement and sue on the original items." (*Porter* v. *Chicago, I. & D. Ry. Co.*, 99 Iowa, 351, 68 N. W. 724.)

The commission to be paid respondents is so vaguely expressed as to be wholly unascertainable. Therefore the instrument is void. (Rev. Codes, sec. 4999.)

The rule is that evidence of the interpretation placed on a contract by the parties is, in general, not admissible as an aid in its construction, but such interpretation and understanding is receivable for some purposes. In the instant case the mistake of the respondents in signing the contract is one of the issues. In such cases evidence of the understanding of the parties is admissible. (*Douglass* v. *Reynolds*, 7 Pet. (U. S.) 113, 8 L. Ed. 626; *Lombard* v. *Martin*, 39 Miss. 147; *Glenn* v. *Lehnen*, 54 Mo. 45; *Dunning* v. *Roberts*, 35 Barb. (N. Y.) 463.) "The understanding of the party is admissible in evidence where such understanding is a fact independently relevant." (*Pottkamp* v. *Buss*, 5 Cal. Unrep. 462, 46 Pac. 169; *People* v. *Clark*, 106 Cal. 32, 39 Pac. 53.)

The instrument set forth in the answer is so vague and uncertain in its terms that it is impossible to determine what was

·intended thereby by way of commissions to be paid to the respondents.   Therefore it is void for uncertainty.   (Rev. Codes, sec. 4999; *Price* v. *Stipek*, 39 Mont. 426, 104 Pac. 195.)

In this case there is an issue of fact as to what the interpretation of the written instrument, Exhibit "B," should be.   The writing is ambiguous and must be solved by extrinsic unconceded facts.   It then becomes a matter for the jury to determine what inference is to be drawn from those facts, and there is no dispute as to the legal meaning of the same, so there is no occasion for any construction by the court.   (38 Cyc. 152.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In May, 1908, Bjorneby Bros., respondents herein, by an agreement in writing became the representatives of the Minneapolis Threshing Machine Company for the sale of its farm machinery in Flathead county.   The contract provided that sales should be made at prices fixed by the company and that the commission to the agents should be computed upon that basis.   This action was brought to recover commissions alleged to be due plaintiffs on account of the sale of a threshing outfit, including stacker, to one Clark Meade.

·It is alleged that the list price of the machinery was originally $4,005.80, but that by directions of the company it was sold to Meade for $3,041.85, and that the defendant has refused to pay the commission or any part of it.   The answer contains certain admissions and denials, not now material, and an affirmative defense to the effect that plaintiffs and defendant had stated an account between them and had mutually agreed that there was not anything due from defendant to plaintiffs as commissions on the Meade sale.   The allegations of this affirmative defense were put in issue by reply, and a trial of the cause resulted in a judgment in favor of plaintiffs for $963.95, interest and costs, from which judgment defendant appealed.

We deem it unnecessary to consider appellant's specifications of error in detail.   The real questions in issue arise over the

proper construction of the agency contract, in view of certain correspondence between the parties, and the force or effect of a so-called settlement agreement, Exhibit "B."

There is not any conflict in the evidence. The negotiations with Meade were initiated by the company through Wood, its Spokane agent. Different terms had been under consideration, but a proposal in the form of an order had been submitted to the company for approval or rejection. By the terms of this proposal, Meade was to turn over to the company a second-hand engine, give his notes for sums aggregating $2,650, and pay the freight on the machinery he was to purchase. It was while this proposition was before the company that the business was first called to the attention of plaintiffs, in a letter from the company to them dated August 5, 1908. By that letter the company disclosed the terms of the proposed sale, but indicated its intention to decline to fill the order because of the insufficiency of the security. Plaintiffs were directed to see Meade and inform him that, if he would execute a real estate mortgage as additional security, the proposition would be considered; otherwise, it would not be. The letter concluded: "If you can get the thing fixed up with him, let us know right away, and we can fill the order promptly, as we have the goods ready to ship." In compliance with the directions given, plaintiffs obtained the order upon the terms already mentioned, but with the additional security required, and this order was accepted by the company and the machinery shipped and delivered. On August 13 the company in a letter to plaintiffs acknowledged the receipt of the Meade notes and securities, and inclosed "settlement sheets" in duplicate, one of which was signed by plaintiffs and returned to the company. On the debit side of this sheet the machinery sold to Meade is listed at $4,005.80. On the credit side are enumerated the Meade notes for $2,650, and the further items as follows:

1 14 H. Port Huron engine net........................391.85
Commission 25 per cent on $3,755.80.................938.95
Commission 10 per cent on 250.00..................... 25.00

The account was thus balanced, the total on each side being $4,005.80.    The sheet concluded with these recitals:

"Upon receipt of settlement as above, there will be due dealer, as per terms of contract commission certificates ............. 0

"Com. to be paid when old engine is resold and Co. gets their net out of it.

"This settlement is correct, there are no claims for shortage, *etc.*"

Notwithstanding plaintiffs were the procuring cause of the [1]  sale and had performed their services under the direction of the company, it is now insisted that, by signing this sheet, an account was stated, whereby plaintiffs agreed that they should not receive any compensation for their labor.   In support of our conclusion that an account was not stated, we quote the following from the opinion of this court in *Voight* v. *Brooks,* 19 Mont. 374, 48 Pac. 549: "An 'account stated' means a balance ascertained between the parties to a settlement, and, where plaintiff is able to show that the mutual dealings which have occurred between two parties have been adjusted, settled and a balance struck, the law implies a promise to pay that balance.   (*Watkins* v. *Ford,* 69 Mich. 357, 37 N. W. 300.)   It is strictly evidence of the admission of a debt; it is the acknowledgment of the existing condition of liability between the parties.   'From an account stated the law implies a promise to pay whatever balance is thus acknowledged to be due.' "

In the letter accompanying the sheet the company wrote: "You will notice we are not figuring any commission *due you at this time."*   While on the sheet, which was a printed form, was written: "Commission to be paid when old engine is resold and company gets their net out of it."   When it is recalled that plaintiffs' commission was fixed by the agency contract, it cannot be said that, by terms so indefinite and uncertain as those employed in this settlement sheet, plaintiffs agreed that nothing whatever should be paid them for effecting the Meade sale.

It is suggested that the company could not have intended to pay any commission on a sale at such a reduced price, otherwise

it would have suffered a distinct loss. The sale price, $3,041.85, is exactly the net amount which the company would have received if the sale had been for $4,005.80 and commissions had been paid according to the terms of the contract. The force of the suggestion is destroyed by the record made by the company itself. In its letter to plaintiff dated August 11 it said: "You can tell Meade for us that he has got the cheapest and best outfit we ever sold in the state of Montana, but it is all right if he only makes good with it and we open the way for good trade, *we will try to forget the loss that we are making.*" If it paid no commission, it could not suffer any loss, and it is only upon the theory that it contemplated the payment of commission in some amount that its statement is intelligible.

It is further insisted that plaintiffs cannot claim commission [2] because they sold for less than the list price and extended the time of payment over a longer period than their contract authorized. The sale price and terms of payment, however, were not fixed by these plaintiffs, but by the defendant itself. Paragraph 10 of the agency contract provided: "The company reserves the right to change or abridge at any time the terms of sale or the factory list price of its machinery, repairs and supplies." By directing plaintiffs to sell upon the terms and at the price stated, the company elected to exercise the right reserved to it, and for the purposes of the Meade transaction the longer terms became the contract terms, and $3,041.85 became the list price upon which commission should be calculated.

Neither is there any merit in the suggestion that plaintiffs [3] cannot claim commission upon the amount represented by the value set upon the second-hand engine. That particular term of the sale was also imposed by the company. Plaintiffs had no choice in the matter, and as to them it represented so much money.

The agency agreement provides that commissions upon time [4] sales shall be due only as the installments are paid to the company. One of Meade's notes for $600 had not been paid

when this action was commenced, and plaintiffs are not entitled to commission on that amount until it is paid.

The sale price of the stacker was $225, and of the thresher proper, $2,816.85. Upon the former, the commission provided by paragraph 11 of the contract is $25, and upon the latter (after deducting $600 for the unpaid note) the commission is 25 per cent or $554.21, making a total of $579.21, for which the verdict should have been returned and the amount upon which interest should have been computed.

The cause is remanded to the district court, with directions to modify the judgment accordingly, and, when so modified, it will stand affirmed. Each party will pay his costs of this appeal.

Mr. Chief Justice Brantly concurs.

Mr. Justice Pigott did not hear the argument and takes no part in the foregoing decision.